Nashua District Court
No. 2007-229

THE STATE OF NEW HAMPSHIRE

v.

NELSON NJOGU & a.

Argued: November 8, 2007
Opinion Issued: December 14, 2007

*Kelly A. Ayotte*, attorney general (*Diana E. Fenton*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. In these consolidated appeals the State challenges the Nashua District Court's (*Ryan*, J.) ruling that a random license plate check by a police officer, without suspicion of criminal activity, constitutes surveillance in violation of RSA 236:130 (Supp. 2007). We reverse and remand.

The record supports the following facts. The defendants, Nelson Njogu, Richard Morelli, Joshua Guimond, Jean Holt, and Kendra Burton, were each the subject of a motor vehicle stop following the random, suspicionless license plate check of the vehicle each was either operating or occupying. In each case, the police officer used either a police radio to contact dispatch or the mobile computer in the patrol car to access the vehicle's registration information.

The defendants subsequently filed motions to suppress, arguing that RSA 236:130 prohibited police officers from conducting this type of surveillance without reasonable suspicion of criminal activity. RSA 236:130, II prohibits the State of New Hampshire or any political subdivision from engaging in surveillance on any public way. For purposes of this statute, "surveillance" is defined as:

> the act of determining the ownership of a motor vehicle or the identity of a motor vehicle's occupants on the public ways of the state or its political subdivisions through the use of a camera or other imaging device or any other device, including but not limited to a transponder, cellular telephone, global positioning satellite, or radio frequency identification device, that by itself or

in conjunction with other devices or information can be used to determine the ownership of a motor vehicle or the identity of a motor vehicle's occupants.

RSA 236:130, I.

Following a consolidated hearing, the district court granted the motions to suppress. Specifically, the district court found that the computers and radios used by police were "other devices" used to determine the ownership of a motor vehicle or identity of its occupants, and therefore the random license plate checks were illegal under RSA 236:130. This appeal followed.

The State argues that the plain language of RSA 236:130, I, does not prohibit the police procedure followed in these cases because a patrol-car computer and police radio do not fall within the purview of the statute. The State submits that, in order to be "any other device" within the meaning of the statute, the device must be capable of either capturing an image or tracking, locating, or monitoring vehicles. By contrast, the defendants argue that the plain language of RSA 236:130, I, includes the devices at issue here, and bars the underlying police conduct. The defendants submit that the phrase "any other device" should not be limited to tracking type devices because the legislature did not specifically include this limiting language, and this court should not add words the legislature did not see fit to include. We find the State's interpretation more persuasive.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *See Grand China v. United Nat'l Ins. Co.*, 156 N.H. 429, 431 (2007). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id.* "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." *Id.* We do not consider legislative history to construe a statute that is clear on its face. *State v. Balukas*, 155 N.H. 377, 378-79 (2007).

The State asserts that, to be considered "any other device" in the context of RSA 236:130, I, a device must be of the same nature as those specified following the phrase "including, but not limited to," *i.e.* a transponder, cellular telephone, global positioning satellite, or radio frequency identification device. Specifically, the State argues that the specified devices all possess the ability to monitor or track vehicles, a capability not shared by a patrol-car computer or police radio. Based upon

this difference, the State concludes that the devices used here were not intended to be included. We agree.

The plain language of RSA 236:130, I, prohibits surveillance using a camera, imaging device, or any other device that, alone or in conjunction with other devices or information, may be used to determine ownership of a motor vehicle or the identity of its occupants. Generally, the legislature's use of the term "any" evidences that the statute should be given a broad reading in interpreting what may be included as a prohibited "other device." *See Roberts v. General Motors Corp.*, 138 N.H. 532, 536 (1994). However, as we noted in *Roberts*, the use of such broad language does not mean that a statute is unlimited in scope. *Id.* at 538. Here, the legislature limited the scope of the term "any" by its subsequent enumeration of four specific devices. We have said that where the phrase "including, but not limited to" is used in a statute, the application of that statute is limited to the types of items particularized therein. *See In the Matter of Fulton & Fulton*, 154 N.H. 264, 267 (2006). Thus, read in the context of the statute as a whole, the plain and unambiguous language of RSA 236:130, I, prohibits "any other device" that is comparable to those devices it has specified.

█ As the State correctly notes, the specified devices in RSA 236:130, I, all possess the ability to track or monitor the movement of a motor vehicle via a signal transmitted through or from the device. A police officer's patrol-car computer and radio do not share this capability. The police officers in these cases either entered into their computer, or transmitted through their radio, information observed first hand regarding the relevant motor vehicle. Thus, the police officers did not utilize a particular signal emanating from a device inside the motor vehicle to obtain the identity of its owner or occupants. Rather, each officer used his or her personal observation of the license plate and retrieved information based upon that observation. While the end result under both scenarios may ultimately be the identification of the owner or occupants of a motor vehicle, the "devices" at issue here function in an inherently different way than those specifically prohibited by the statute. To adopt the defendants' expansive interpretation of "any other device" would require us to ignore our well-settled construction of the phrase "including, but not limited to." Therefore, we conclude that the plain language of RSA 236:130, I, is not ambiguous, and the use of a patrol-car computer and police radio do not constitute an "other device" in violation of the statute.

Further, we disagree that our interpretation improperly adds words to the statute, as the defendants suggest. Our construction of the phrase "including but not limited to" is well-settled and long-standing, *see, e.g.*

*Conservation Law Found. v. N.H. Wetlands Council,* 150 N.H. 1, 6 (2003); *Town of Hooksett v. Baines,* 148 N.H. 625, 630 (2002); *Roberts,* 138 N.H. at 538-39, and the legislature is presumed to know the meaning of the words it chooses and to use those words advisedly, *DaimlerChrysler Corp. v. Victoria,* 153 N.H. 664, 667 (2006); *see also* RSA 21:2 (2000) (words and phrases that have acquired a peculiar and appropriate meaning in law shall be construed according to such peculiar and appropriate meaning).

The defendants argue that the statute should not be thus limited because the specified devices, including a camera or other imaging device, have other non-imaging, non-tracking functions. However, although the specified devices may serve legitimate functions distinct from the prohibited surveillance capability, those functions are not relevant to the device's ability to reveal the owner or occupier of a motor vehicle. The relevant characteristics of the devices relate to their ability to produce an identifying signal. As used in these cases, the patrol-car computers and police radios simply did not have such capabilities.

Finally, even if we assume that the statutory language is ambiguous, the recent enactment of RSA 261:75-a (Supp. 2007) supports our interpretation. *See Franklin v. Town of Newport,* 151 N.H. 508, 512 (2004) (noting comments concerning prior law contained in subsequent legislative history may be considered). RSA 261:75-a permits a police officer to perform a random, suspicionless license plate check of a motor vehicle for general crime detection purposes. At the February 7, 2007 committee hearing on this bill, Commissioner Earl Sweeney stated the following:

> Senator Letourneau introduced this as [*sic*] my request. I worked, along with [assistant attorney general] Anne Rice … quite carefully with Representative Kurk last year on the bill that had been put in on highway surveillance devices and we wanted to be sure that there would be practice [*sic*] that law enforcement was currently doing. Representative Kurk said that his purpose in putting the bill in was if any new technology came down, new surveillance technology, he wanted the Legislature to have the opportunity to authorize it. So, we testified at the hearings and we were quite certain that this would not interfere with anything that law enforcement officers were currently doing.

SENATE COMM. ON JUDICIARY, HEARING ON SB 41 (February 7, 2007). Senator Letourneau echoed his statements regarding the intent behind RSA 236:130, I, noting that Commissioner Sweeney "had spoken to the committee and assured the police officers that there was no intent to stop anything they were doing currently; it was just to stop highway surveillance of cameras on the highway surveilling persons." *Id.* The

legislative history of RSA 261:75-a demonstrates that the legislature did not intend to prohibit the type of surveillance at issue here when it enacted RSA 236:130.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. I agree with the majority that the use of the word "any" in RSA 236:130, I (Supp. 2007) is modified by the phrase "including but not limited to" and the list that follows. Although, on its face, the word "any" is broad language, "there is a common rule that a general statutory term is to be understood to cover further instances comparable to any specific examples listed with it." *State v. Hodgkiss*, 132 N.H. 376, 379 (1989). Moreover, "[w]e have previously held that the use of the phrase 'including, but not limited to' in a statute limits the application of that statute to the types of items therein particularized." *In the Matter of Fulton & Fulton*, 154 N.H. 264, 267 (2006). Accordingly, I concur with the majority's holding that "read in the context of the statute as a whole, the plain and unambiguous language of RSA 236:130, I, prohibits 'any other device' that is comparable to those devices . . . specified."

I also agree with the majority that the devices specified in RSA 236:130, I, "all possess the ability to track or monitor the movement of a motor vehicle via a signal transmitted through or from the device" and that "[a] police officer's patrol-car computer and radio do not share this capability."

I write separately to raise the following concern. In my opinion, RSA 236:130, I, is internally inconsistent. Although, on its face, this statute purports to define "surveillance" as "the act of determining the ownership of a motor vehicle or the identity of a motor vehicle's occupants," the devices listed in the statute do not do this. Cameras, imaging devices, transponders, cellular telephones, global positioning satellites and radio frequency identification devices do not by themselves enable one to determine who owns a vehicle or who occupies one. Rather, as the majority aptly notes, all of these devices have the ability to track or monitor a motor vehicle's movement. Thus, it seems to me either the prefatory language in RSA 236:130, I, or the statute's list of devices should be revised to cure the apparent incongruity.