Concord District Court
No. 2008-917

CHRISTOPHER LALLY

v.

LAUREN FLIEDER

Submitted: September 24, 2009
Opinion Issued: October 30, 2009

Christopher Lally, by brief, *pro se.*

Lauren Flieder, *pro se,* filed no brief.

HICKS, J. The plaintiff, Christopher Lally, appeals the Concord District Court's (*Boyle,* J.) dismissal of his RSA chapter 540-A action against the defendant, Lauren Flieder. We reverse and remand.

The record supports the following facts. Lally rented an apartment from Flieder as a month-to-month tenant for approximately two years. The parties did not have a written lease agreement. In June 2008, the parties agreed that Lally's tenancy would terminate at the end of August. On July 31, 2008, Lally paid rent for the month of August but told Flieder that he was not moving until the following summer. That same day, Flieder served Lally with an eviction notice requiring that he vacate the apartment on or before August 31, 2008. Lally, however, remained in the apartment through the end of August. On September 2, 2008, Flieder filed an action with the trial court seeking unpaid rent and a writ of possession. Six days later, Flieder terminated the cable television service to Lally's apartment. Lally wrote a letter to Flieder requesting that she restore the cable television service. After Flieder failed to do so, Lally filed a petition with the trial court pursuant to RSA chapter 540-A.

On September 24, 2008, the trial court held a hearing on Lally's request for relief and Flieder's petition for a writ of possession. At the hearing, Flieder testified that after speaking with the cable provider, she learned that Lally's apartment was receiving cable television through an illegal connection. Upon discovering this information, she disconnected a wire supplying cable to Lally's apartment. Lally argued that the termination of the cable connection was designed to carry out a self-help eviction. The trial court granted Flieder's petition for a writ of possession and dismissed Lally's action, ruling that cable television is not a protected utility under RSA 540-A:3, I.

On appeal, Lally first argues that the trial court erred by ruling that cable television service is not a protected utility service for purposes of RSA 540-A:3, I. Second, he contends that Flieder attempted to unlawfully evict him in violation of RSA 540-A:2. A third issue regarding an alleged violation of the right to quiet enjoyment under RSA 540-A:2 is raised in the notice of appeal but not briefed, and therefore we deem it waived. *See In re Estate of King,* 149 N.H. 226, 230 (2003).

The interpretation of a statute is a question of law, which we review *de novo. Kenison v. Dubois,* 152 N.H. 448, 451 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words

used. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.*

RSA 540-A:3, I, provides:

> No landlord shall willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to water, heat, light, electricity, gas, telephone, sewerage, elevator or refrigeration, whether or not the utility service is under the control of the landlord, except for such temporary interruption as may be necessary while actual repairs are in process or during temporary emergencies.

RSA 540-A:3, I.

██ "We have said that where the phrase 'including, but not limited to' is used in a statute, the application of that statute is limited to the types of items particularized therein." *State v. Njogu*, 156 N.H. 551, 553 (2007). Thus, read in the context of the statute as a whole, the plain and unambiguous language of RSA 540-A:3, I, protects "any utility service" that is comparable to those services it has specified. The specified utility services in RSA 540-A:3, I, all pertain to the habitability of a dwelling or a person's well-being. Modern cable television also pertains to the habitability of a dwelling and a person's well-being. Indeed, many people access essential telephone service, the Internet, news information and entertainment by way of cable. Thus, the unlawful termination of a tenant's cable television service would be a means of accomplishing a self-help eviction — the very evil the legislature meant to deter. The legislative history supports the conclusion that RSA 540-A:3, I, was intended to prevent landlords from engaging in self-help tactics. At a hearing, the Senate Public Works Committee considered testimony that a landlord seeking to evict a tenant would "do things such as turn off the heat, electricity or other utilities." Moreover, the New Hampshire House Journal indicates: "This bill is needed because of the abuse of a landlord to his tenants in evicting the person without giving proper notice." N.H.H.R. JOUR. 333 (1979). In view of the legislative history and widespread use of cable television as a utility service, we conclude that the unlawful termination of cable television by a landlord is the type of self-help tactic that the legislature intended to prevent. Therefore, we hold that cable television is a protected utility service under RSA 540-A:3, I.

Accordingly, we reverse the decision of the trial court dismissing Lally's RSA 540-A:3, I, claim and remand for further proceedings consistent with

this opinion. We note that the trial court did not address specifically whether the defendant attempted to unlawfully evict the plaintiff in violation of RSA 540-A:2. We remand this issue to the trial court for further consideration in light of our opinion.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.